Case No. 25-1047. Thrivent Financial for Lutherans and Thrivent Investment Management, Inc. Petitioners v. Securities and Exchange Commission. Mr. Kay for the petitioners, Ms. Berrizzi for the respondent. Good afternoon, counsel. Mr. Kay, please proceed when you're ready. Your Honors, good afternoon, and may it please the Court, I would like to reserve three minutes for rebuttal. The rulemaking petition that Thrivent and Timmy filed with the SEC presented a facial challenge to FINRA rules. Those rules clearly are not consistent with federal law. That is because they prohibit FINRA members from agreeing with their customers to resolve disputes in arbitration on an individual basis, in the arbitration form of their choice, and using the arbitration rules that they choose. The Supreme Court has been clear that restrictions like these can only be imposed where Congress has expressly given the agency that power. But the federal securities laws provide no such congressional command, and the FINRA rules are therefore invalid on their face. The rulemaking petition explained all of this in great detail, but the SEC denied the petition without addressing any of it. Instead, the SEC ignored the petition's merits, a point that the SEC acknowledged in its response brief. In so doing, the SEC abused its discretion in two distinct ways. First, settled precedent applying the APA requires an agency to provide some reasoned response that addresses a petition's merits, even if only briefly. Here, the SEC clearly abused its discretion by denying the petition without addressing the merits to any extent at all. Is that true that they have to address the merits? Because it seems to me that there are some cases that say, you know, it's not an agency priority, it's a resource allocation issue. Maybe you need to say more about that, but you can do that and not address the merits, can't you? Your Honor, I don't believe that that's correct, especially in the context here where the petition presented a challenge of validity of the rules, whether they were illegal. The SEC did not cite a single case that held that the agency cannot address the merits to any extent whatsoever. And we didn't identify any cases in our research that hold that. The court's precedents require a reasoned explanation, a reasoned response. And here, the SEC's response was conclusory. And to use the court's terms from the first Flyers' Rights decision, it was vacuous. I'm just looking at cases like Exhaust List and Wild Earth Guardians. And the EPA would say things like, we have other rulemakings in progress. We concluded that in light of these constraints, we're going to prioritize other sectors and emit more air pollutants. Like, that seems like they declined to address the merits of the petition. Well, and two points, Your Honor. First off, that's not what the SEC did here. Here, the language was entirely conclusory. Yeah, I agree that perhaps that language was not enough. But it just seems, I guess I'm trying to home in on your assertion that they have to in some form address merits.  Because it was my understanding that they did not necessarily have to. They could rely on these other types of issues, but they would have to say more about those issues. And so I understand Your Honor's question. And with regard to the Wild Earth Guardians case, the agency did invoke its resource allocation, but it did so in addressing the merits. So the merits of the petition related to the regulation of greenhouse gas emissions. And so there the EPA explained, here is what we're doing to address and curb greenhouse gas emissions. And so we're using our resources to address other sources, electricity generation, motor vehicles. That accounts for 60 percent of greenhouse gas emissions, whereas coal-fired power plants represent 1 percent. And so in that way, we are prioritizing our resources, but we are addressing the merits and saying, the merits of your request, which are address coal plants, is less pressing to us than these other factors of greenhouse gas emissions. So even there, the agency did take on the merits of the request in saying, our resources are being prioritized for other areas where greenhouse gas emissions need to be regulated. I would like to address the second way in which the SEC abused its discretion, is that here, this rulemaking petition identified rules that are unlawful on their face and the SEC failed to correct them. The commission has long known that the federal securities laws provide no authority for the arbitration restrictions that FINRA's rules impose. And instead of addressing this issue, the SEC here, in the context of our rulemaking petition, has conducted a campaign of avoidance that has gone on now for nearly four years. Why do you say the SEC knows that it has to allow your arbitration agreement to displace the FINRA one? Well, Your Honor, I first – Maybe I misheard you. I understand. Tell me. Well, this rulemaking petition presents a facial challenge to FINRA's rules. So the question is not whether the commission is required to allow our arbitration rules to be imposed, but whether the FINRA rules are consistent with federal law. And this presents a facial challenge. On that point, absolutely – You have to run the – you want us to view this as a facial challenge, so you have to run the board, that there's no situation where a private arbitration agreement could displace the FINRA – Again – Would not displace. Right. And again, Your Honor, there's no issue presented here. This is the way the SEC tried to frame it in their brief. Absolutely – I'm asking you what you mean by your facial challenge here. Understood. So just as in the Supreme Court's Epic Systems case where the Supreme Court held that the National Labor Relations Board's rules prohibiting employers from agreeing to resolve disputes individually in arbitration, the Supreme Court held that that restriction exceeded the NLRB's authority. Here, our argument is that FINRA's rules exceed the authority of the SEC, exceed the authority of FINRA, which derives its authority from the SEC, because they provide the limitations that I addressed before. They preclude parties from agreeing to resolve disputes individually in arbitration. Is that distinguishable from Epic Systems? Because they're not saying you don't have to arbitrate. This is just about forum selection, right? No, it's not. That seems like a different kind of limitation, and I wonder if it's as absolute as you say about that. The issue here is the enforceability of FINRA's rules. And FINRA's rules are crystal clear, as we addressed in our papers, that they prohibit FINRA members from entering into agreements that require individual resolution of disputes. They prohibit FINRA members from agreeing to resolve disputes in the form of their choice. And so in that… Right, I'm just saying those types of restrictions are not addressed by Epic Systems in other cases, are they? These are different in kind is kind of what I'm trying to get at. I don't agree with that, Your Honor. The Supreme Court's FAA precedent, including Epic Systems, is clear that unless there is an express congressional command empowering the agency to limit the right to agree to arbitrate in any way, that such limitations can't be imposed. And so that's what the Supreme Court has held, not just in Epic Systems, but similarly in Italian colors and with regard to the securities laws in McMahon, Rodriguez. Is there a case law that says any kind of limitation, that we treat all limitations the same? Because to me, it seems a little different to say you can arbitrate all you want. You just have to do it in this form. I mean, I guess I would say all of the cases. That's what every case… I mean, the court in Epic Systems used the language that the FAA protects arbitration rights pretty absolutely. And I think it essentially, it says where you want under the rules that you want. And so that's what is at issue here. And it's especially at issue with regard to individual arbitration. So did Epic Systems involve one form of arbitration versus another? Epic Systems prohibited… Litigation. Epic Systems involved a prohibition on arbitration. Right. And so it seems here… The alternative there was court litigation, class action, but court litigation. With regard to class actions. That's right. And so here we have the same restriction. Here we have… But it's arbitration versus arbitration. Not with regard to class actions, Your Honor. Well, it's a little confusing to me what the FINRA one means, whether there's already class action going on, you pull people out. But put that aside for a minute because you said you have a facial challenge here and that all the precedent supports you. But the two cases actually involving the SEC, McMahon and Rodriguez, President McMahon went out of its way to say that it was litigation versus SEC-regulated arbitration procedures. Right. It doesn't hold true for arbitration procedures subject to the SEC's oversight. Commission has expansive power to ensure the adequacy of the arbitration procedures employed by the SROs. And they can regulate the rules adopted by the SROs. SEC regulates it relating to consumer disputes, including the power to mandate the adoption of any rules it deems necessary to ensure that arbitration procedures adequately protect statutory rights. I'm reading from McMahon on 233 and 234. And you had the same SEC-approved arbitration procedure going on in Rodriguez. And so the both times when you're talking about heavily regulated entities and in an industry where the market depends upon relying on enforcement of rules for fairness, transparency, integrity in the market, the whole market depends upon it. Then when your argument is that precedent requires the SEC to stand down and allow brokers and dealers to create their own form for adjudicating their own compliance with the law in suits brought by their customers, there's no precedent for that, at least as to these SEC cases. None whatsoever. And it seems maybe at the end of the day you'd win, but your whole brief and your facial challenge is this is controlled, it's already answered by the Supreme Court. And I just see two Supreme Court cases saying we'll enforce arbitration as long, you know, in a context where the SEC is providing supervision to ensure that the law is still complied with. So it seems to me I just I don't understand, I guess, the argument that this is already settled. I understand Your Honor's question. And I might make two principal points. I think the first point is that part of the issue here relates to the way that the SEC chose to address the rulemaking petition and avoid this substantive question completely. So we don't have the SEC's position in the context of the rulemaking petition addressing this at all. And that, going back to what I was saying previously, appears clear to be consistent with the SEC's consistent, persistent determination to avoid addressing that question. The second point I would make, Your Honor, is that the SEC's policy statement. Persistent, consistent to avoid. Have there been other petitions for rulemaking by other parties other than Grivant raising the same issue? Not with regard to broker-dealers. In our opening brief, we addressed the SEC's efforts to avoid any final agency action with regard to the extent of authority to limit arbitration under the 33 Act. And that was an issue that we explained at some detail in our opening brief because it is consistent with the position that the SEC had been taking. But that gets to my second point, Your Honor, which is, I believe, crucially important with regard to Your Honor's specific question on this issue of oversight. Because the SEC did, as we explained in our policy – I'm sorry, in our reply brief, issue a policy statement which is binding on the SEC as a regulation two days after we filed our response brief – I'm sorry, after the SEC filed their brief in this court, where the SEC concluded in the policy statement unequivocally that the Exchange Act, in the context of issuer-investor arbitration, does not include any congressional command that would empower the agency – I'm sorry, the Commission in any way to limit arbitration rights. And in footnote 39 of that policy statement, the SEC expressly addressed the point that Your Honor is asking about as far as agency oversight. The SEC, in that footnote, said it would be inconsistent with subsequent Supreme Court decisions to look at this question of oversight. The SEC acknowledged that the Supreme Court precedent in the three decades since McMahon and Rodriguez looks simply to whether there is a clear and manifest indication to limit arbitration rights. Are you saying we shouldn't follow McMahon and Rodriguez anymore? I'm saying that McMahon and Rodriguez hold that the securities laws do not contain an express congressional command that's necessary to limit arbitration rights. The SEC acknowledges that. I mean, there's an awful lot of explanation there as to the careful context in which they made that decision, that is, SEC supervision of the arbitral process. And for obvious reasons. Again, this is not directed at Thriven in particular at all, but you can imagine great concern about sort of fox guarding hen house. I'm not suggesting Thriven's a fox, but if it works for you, it works for everybody with your facial challenge. I understand, Your Honor. And I think the important point there is that the SEC, in their policy statement, expressly disclaimed the importance of that analysis. They said that no subsequent decision has referred to oversight as a factor. And so the SEC has now said that 33 claims have been subsequent. But so but the commission, the commission expressed its legal view that that issue or investor claims can be arbitrated without any oversight. They said there is no oversight to the SEC is reading the Supreme Court precedent. I know. No, I understand that, Your Honor. And that and that, again, gets back to the posture that we find ourselves in where where the SEC avoided addressing this substantive question. I get that point is this is not affected by my question, but I was just I'm trying to understand the nature of your challenge here is as a facial challenge to FINRA's rules. To FINRA's rules. And what year did the SEC approve those rules? I don't have the. It was 2007. I think that yes, that's right. You didn't challenge within 60 days of that decision. So at that point in time, there was. Arbitration Act had been around an awfully long time. Right. And so and so at that point in time, my clients weren't weren't directly harmed by those rules. And so that's why we're bringing the rulemaking petition that that we're bringing now. Again, you have your argument about the content of their response, but I'm not sure how you can bring a facial challenge to FINRA rules of arbitration if they weren't brought within 60 days of the SEC's approval of those rules. Well, I mean, the rulemaking petition has long been recognized as as a vehicle under the APA to challenge the validity of existing rules. The Supreme Court, even as recently as Corner Post, recognized that that option always remains available, even, you know, when when a party might be time limited on a on a rule. The rules is applied to that party. That's what was going on. Right. And so and so it's an as applied challenges. I'm just confused by your facial versus as applied. If you just say I want to challenge FINRA rules as applied to our agreement. Well, it's different than a facial challenge to the rules across the board, which is I'm just I'm kind of confused as to your position. Well, I mean, so so your honor, I want to make one more point that I that I also recall to your question about SRO oversight on arbitration. I think that also the Supreme Court's decision in Italian colors speaks clearly to this. And epic systems do. It's not just a question of whether or not there is. I mean, they say there is no congressional command. Those cases also address. So in in Italian colors, as I'm no doubt your honor is aware, the court address at length could rights be vindicated for class members if there was no class action. And the Supreme Court looked at that and it determined that that was not a factor that it could consider in the context of determining whether or not antitrust claims could be required to be arbitrated individually and not subject to class treatment. The court held that the question is and the only question is, has Congress spoken in a way that arbitration rights are limited, period? And so the court said there's no congressional command empowering, you know, limitation of arbitration rights. And that is the test. Similarly, in epic systems, the NLRB argued about its authority to protect workers' rights and to oversee that. And the court again held clearly that the question is, does the statute by its terms include an express command empowering the limitation of arbitration rights? So so that is consistent with what the SEC recognized. I understand that the court is not bound by the SEC's interpretation of Supreme Court precedent. But but they're acknowledging the point that that that I'm making here that we made in all those cases involved didn't involve the SEC where we have to two cases from the Supreme Court that in approved arbitration only when it was regulatorily supervised arbitration. That is that the party that the that the party, the regulated party could not have a contract with this customer to decide who would decide whether we have complied with the law. I'm not saying let's move over to today or tomorrow, how they what they would do with those cases. But we as Woolly Court of Appeals have that sort of precedent staring us in the face that makes this at least a much more complicated question for purposes of your facial attack here. That's separate from your argument just about the content of their response to your rulemaking. Understood. Can I ask you, I had one of the sort of procedural confusion. And so my understanding from your brief is that you've presented to the SEC your agreement in your registration statement and attaching your customer agreements that contain these arbitration terms that not FINRA arbitration. And then the SEC did not act on those, which meant in that context, they were approved by the SEC and action equals approval by the SEC. They weren't effective. That's that's right. Your honor. They went effective. Yes. Right. And so are you using those? Have you been using those customer agreements since they became effective? No, we have not. And we address that because FINRA and this was expected. You went to FINRA after SEC first and then. Correct. Did you tell FINRA that the SEC had already approved this? Yes, your honor. We did. And so this is in the rulemaking. This was really confusing. Yeah, this is this is in the rulemaking petition. But that's absolutely and exactly what happened is that the these registration statements went effective and then my clients engaged with FINRA and said, we now have these registration statements. We would like to be able to sell them and market them and and engaged in a dialogue with FINRA and FINRA said, well, that would be a violation of our rules. So you're using registration statements that were not approved by the SEC? No, they're those those registrations. There were other there are other registration seems. I mean, my my client has has a wide range of of. Well, actually, is the very sort of life insurance securities, a very variable process. I assume that as to the ones that issue here, those are the ones that were approved by the SEC by silence. I'm just going to call it approved by the SEC and then later rejected by FINRA. And so. You're using other variable products that have also gone effective that do not have the the mandatory aspect of you're able to use the same registration statements for different products, even if the SEC hasn't approved product. OK, there they've all the all the registration statements that are being marketed and sold have gone effective, have gone through SEC registration. So we have this when the SEC is signed off on. But the FINRA then said, correct, we beg to differ. Correct. OK. Alrighty. And again, Your Honor, I do want to emphasize, though, that I mean, that is a necessary aspect of our being here today. As far as having standing and being harmed by these FINRA rules. But again, this is this is a rulemaking petition challenge to the validity of those FINRA rules that don't that don't depend on the contents of particular. All right. Why didn't you seek SEC review of FINRA's decision? When it said you can't use these registration statements of the SEC, it already said you can. Well, so so I guess it's two it's two separate questions. Right. One is is is registration of product under the 33 Act. And then the other is whether or not they can be marketed and sold. And so so so the challenge. Could you have could you have gone to the SEC? FINRA said no. Well, I think that goes. You just said, yes, please resolve this problem. Judge Millett, I understand your question. I think that goes to the fact that we're now on four years since we filed a rulemaking petition with the SEC. Just I'm asking a procedural question. Well, no, but what I'm what I'm saying is, is we didn't get we had informal conversations with FINRA about this. And and you don't have a final decision from FINRA. We have. Well, FINRA provided us with a letter that that it would be a violation of their rules to market and sell these products. So that doesn't sound like an informal discussion. That sounds like a final decision by FINRA. No, I there was no formal adjudication process that we went through with FINRA. We engaged in extended dialogue. We took the route that would present this question to the SEC because the SEC has the responsibility to approve and oversee FINRA and make sure that its rules are consistent with federal law. So so to the extent that the question is whether or not the rules are consistent with federal law, we filed the rulemaking petition with the SEC. And my point on the on the four years is that even doing that took us four years. And so to the extent we were you're asking about a preliminary process with FINRA where FINRA has may have a different view on the enforceability on federal law. We took our we filed a rulemaking petition with the SEC, which is absolutely an appropriate vehicle to raise the invalidity of federal laws. And so so even that has taken us four years to get to where we are right now. If it if it if it turned out that the Hobbs Act limitation period bars your facial challenge to the FINRA rules or SEC's approval of the FINRA rules. Then how would you could you take the letter from FINRA to the SEC and either just directly ask the SEC for action review of that or not? You have to do you have to only is the only way to get to the SEC through a judicatory process at FINRA. That's my first question. And the second one is, why couldn't you do a petition for rulemaking that focus solely on the FINRA decision in your case? If you can't go directly to the SEC from the FINRA letter, why wouldn't your petition for rulemaking be confined have to be confined to FINRA's action on your particular register? I'm sorry. I'm not sure I heard the last part of your question. I'll try it one at a time. I'm not being fair when I ask questions at once. So could you got this letter? You had discussions with FINRA and FINRA says or somebody in FINRA says we don't think you can have that. No, you can't. If you have that that those provisions in your customer agreements, they will violate FINRA rules. What recourse do you have from that? Is there any recourse from that? Can you appeal to FINRA board or can you go to the SEC at that point? I don't believe that there was final FINRA action in the sense that we hadn't taken steps that would be required. It hadn't gone to the FINRA board. And so I don't believe that without going to the FINRA board, it could be something that we took to the SEC. But if you went to the FINRA board, then you could go to the SEC. That's my understanding, Your Honor. So we don't even have a final decision from FINRA in this case. No, but Your Honor, this is a rulemaking petition challenge. First off, the SEC hasn't made any of these arguments. And I do think that that's an important point of emphasis here that there's no argument that. The Hobbs Act time limitation, is it jurisdictional or no? I don't believe so. But I actually, I think, let me correct that. I believe that the Hobbs Act is. But here, this is a rulemaking petition challenge. And again, I would direct Your Honor's attention to Corner Post where the court addressed. Corner Post involved the APA, not the Hobbs Act. And this is an APA. We have an APA challenge here. It involved the APA's statute of limitations, not the Hobbs Act. But there's no, but there the court. Statute of repose. Right. The APA statute of limitations were held not to be in Corner Post. I understand that, Your Honor. And that's the statute of repose. Right. But that's where that's where the court said, even even if the dissent was correct. The rule, the rulemaking petition challenge to the validity of regulations is always there. And so it's applied. I'm sorry, as applied. I don't I don't understand that to be a distinction. We haven't seen that in any in any rulemaking petition challenges where where it's as applied challenge as opposed to a challenge to the validity. Is Corner Post not challenging the application of the regulation to itself? Corner Post absolutely was. But my point is that the court in in addressing the dissent. I guess the point is that if there's if you can just bring facial challenges whenever, then there's never any either limitations period on the APA or repose under the Hobbs Act. But that's that is consistent with the APA's rulemaking petitions case law. I haven't we haven't seen a single case that holds that a rulemaking petition is. Is prohibited as because it wasn't brought within 60 days. That's the purpose is that Congress provided a vehicle for parties to challenge the validity of existing rules through a rulemaking petition challenge. And absolutely, the court addresses there that, you know, the standard overview may be deferential, but it's it's there. A rulemaking petition is not is different from a challenge to validity. It's an argument for you that you should change your rules because of your validity of which validity. And so Geller going back to the court's decision in Geller, that was absolutely right. But that was absolutely. But that was a challenge to the validity of the rules. Right. No, I completely understand that. But I mean, it's just it's asking you, you agency super broad discretion to change it because of this. Right. And so and so that gets to the plain error of law that that the court has found to constitute compelling circumstances to vacate a rule when rules are premised on plain errors of law. And so even the standard, your honor, that this court has articulated in the first flyers rights decision in America and horse, the problem with plain errors of law. So you've got two Supreme Court decisions involving arbitration in the very context we have here that focused on. The fact that it was involved and focused on and McMahon, the fact that it was SEC superintended arbitration. That's right. And then we have the subsequent cases. OK. But I'm just we've already done this. I don't mean to be right. Right. I'm having a little trouble with your plain error of law argument here. But your honor, to that point, I do believe that that I mean, when when the court's standards talk about the agency being blind to the source of its delegated authority, the court absolutely doesn't doesn't owe deference to the agency's legal interpretation in the sense that Wilbur Bright makes that clear. But where the agency says, as they did in their policy statement, that that this, you know, this factor that the court looked at in McMahon is not a factor. And they've now they've now actually adopted a regulation with regard to issuer investor claims that can be you can put arbitration provision in a registration statement as a result of their policy statement. And so their view here is relevant. That is their view that that what the court that essentially that was dicta in McMahon and Rodriguez, that it's been superseded by the court's own own standards in Italian colors, in epic systems where agencies made the same arguments. The NLRB made effectively that argument that they had a charge to protect workers under under the Labor Relations Act. And the court rejected that. That's it. The only question is, is there an express congressional command? And in the National Labor Relations Act, there's not, which is what the court in McMahon and Rodriguez also addressed in with regard to the 34 Act. And so so in that sense, I do believe that the commission's policy statement on this point is crucially important. Why don't we talk a lot about the commission? Yes. And unless there's further questions from my colleagues, maybe we'll hear from commission counsel. Can I just ask? Yes. Does your position then depend or turn upon this plain error aspect? Because I guess I'm thinking about the rule we would be creating here, because it is a very deferential standard of review, like making up when somebody petitions for an agency to change their rules. We want to give a lot of deference to the agency in picking and choosing like what rules they take up. And I just want to understand, does your are you asking us to hold that because this is a plain error and it's clearly and obviously something that's wrong? Therefore, there is an obligation to address the merits of that. I'm just trying to understand how this fits within our case. They can rely on resource concerns and discretion, et cetera. And is the distinguishing factor that it's a plain error of law? I understand your question. I think I want to try to break that down between the two ways in which we contend that the SEC abuses discretion, because the first is the response that the commission gave here. It just plainly doesn't satisfy its obligations. Let's put that aside for a minute. Yes. No, no. But I understand that. I'm asking for like what's the legal principle that we would be announcing? Right. So the legal principle there is that absolutely as part of a reasoned response, the agency needs to address the merits to some extent. And so here are our contention in the rulemaking petition. They claim this is a plain error. We don't see it that way. We think it's unclear. And we don't have the resources to work that out right now. Well, I suppose that to the extent they say they claim it's a plain error and we don't see it that way, that would. So here they argue. Right. And they argue, well, we haven't addressed. They identify what the legal question is. Like their statement of the case, their counter statement of the case. They understood that the ruling petition was presenting a facial challenge, and then they try to reframe the argument as a battle between. But I guess the reason I'm asking it this way is because any person petitioning for rulemaking can say this is a plain error of law. It's got to be fixed. And I don't think that that can be the governing standard for requiring the rulemaking to happen. So if it's sufficient to say they allege it's a plain error, we don't see it that way. And it's going to take a lot of resources for us to figure this out. And we don't have the resources. Would that be sufficient? Well, I suppose they would need to explain the extent of their resources much more than they did here, consistent with Wild Earth. Right. But in terms of the legal standard, in terms of the legal standard, then that would be a different question before the court. But it would be sufficient for an agency to say that. Well, so I don't think first off, I don't think we're asking the court to create any any new standard here. The court in Geller made clear that where it feels different to me because you're trying to say that this agency has to consider your petition for rulemaking because you say it's a plain error of law. No, we're saying that the agency has to. I mean, there are due process that has to consider any rulemaking petition. There are due process implications here. Absolutely. Where a legal challenge is being made. So, you know, the procedural posture that we're in is that either we bring this rulemaking petition challenge or we bet the farm by risking sanctions. You appeal to FINRA's board and then you take that decision to the SEC. You've got process here, other processes here. Well, but either way, you end up back at the SEC. And so. So, but then you end up in the SEC before the SEC in a very different posture than a rulemaking petition. And you could win before the SEC. They're ready to answer that question. It's easy. All right. So but again, this goes to where it took us four years to get here. And and and it's not apparent. We're talking hypotheticals. We could have gone on both tracks. And we aren't exclusive. I understand, Your Honor. I don't believe that that changes the legal standards that are before the court. Responding to your due process concerns. Well, OK, so you only had one or the other, and that's doesn't seem to me procedurally accurate. I guess I would I would say that what due process addresses now we're talking about general standards for rulemaking petitions. And so. So to judge pants question, to the extent there is a challenge to the validity of any rule in a rulemaking petition, it does present that that due process question. And so. So here, if the agency denies it without addressing the merits at all, it does present a due process question as well. So and it was interesting that that that was another point that that we raised in our brief. The SEC chose not to respond to that. And so. So. So on your question, Judge Pan, the second the second aspect with regard to the second way in which the agency abuses discretion is that here it was presented with this compelling circumstance where the rules are are inconsistent. Of course. Right. And so but also consistent with with now the SEC's own policy statement. Right. I just read our cases to suggest that they have a lot of discretion in saying we don't have time to do this right now. We have other priorities, et cetera. And I'm trying to understand, like, where the merits come into this in a way that's not so burdensome. So I suppose it removes the discretion. Right. And your honor, I suppose that, for example, the Environmental Health Trust case speaks to that where it talks about where the predicate of the agency's decision has eroded. So here we have a policy statement. I feel like those cases are a bit different because it seems like in those cases there was an actual fact that the commission said this could change. And we're going to revisit this later. And then it did change. And then they didn't revisit it later. I just feel like that's a little different here because you're saying this was the same fact all along. Well, and so and so that gets to the development of the law. And so which which the SEC also acknowledged in the policy statement that, yes, we had McMahon and Rodriguez. Since then, we've had Italian callers. We've had EPIC systems. This is a point that the policy statement makes that the law has gone even further to make clear that these laws that these rules are not consistent with federal law. And so so in that sense, that goes to whether or not it was plain air. I'm trying to understand. Right. And so here, to the extent that subsequent Supreme Court precedent has made clear, as the SEC recognized in their policy statement that that there is no such predicate anymore, that there is no basis that that's where that's where we are at this point in time. My colleagues don't have additional questions for you. This will give you a little time for rebuttal. Thank you. Ms. Parise. May it please the court, Emily True Parise for the Securities and Exchange Commission. The commission reasonably explained its denial of Thrivant's rulemaking petition, and the denial should be upheld. The commission provided Thrivant with a brief statement setting forth the rationale for its decision, and no more was required under the APA or applicable precedent. Thrivant's suggestion in this argument, in this appeal, that the commission was required to address a specific question raised by its rulemaking petition, here whether certain funeral rules are inconsistent with the Federal Arbitration Act, simply because Thrivant asserted that the relevant rules were unlawful under cases applying the FAA, finds no support in the law and for good reason. It would allow the filer of a rulemaking petition to commandeer an agency's resources and priorities merely by making an assertion that a challenged rule is unlawful. That position is remarkably broad. It could open up agencies to campaigns that involve filing rulemaking petitions regarding every regulation an agency promulgated or approved, asserting the petition thinks the rules are unlawful. And under Thrivant's view, the agency would be required to address each and every petition by saying whether or not the agency agreed and why. But do you think the SEC can respond to any petition for rulemaking by saying this is just not our priority right now? I mean, certainly the cases such as Wild Earth and others say that is a valid reason for denying rulemaking petitions. Here, of course, the agency said more than that. It didn't say a lot more than that. I mean, certainly it's not the longest document the agency's ever produced, but that's befitting the fact that denials of rulemaking petitions are decisions of agencies not to act. And all the APA requires is a brief statement of the reasons. Seems very bare bones. There must be some level at which it becomes too bare bones. And this just seems so general. And, you know, basically, we're prioritizing our resources for other matters. We don't consider that our petition was a priority. These rules have been in effect for a long time. I mean, it just seems so general. I mean, what if it hypothetically what if it really was a very clear violation or a rule? You don't have to mention that in saying why you're not going to address it. I mean, I think if you're in a situation where it's as clear as like Geller or something, then maybe it might have been an abuse of discretion not to mention it. But as we explain in our briefs, briefs were far from Geller land, and so it was not. Don't you have to say something when they are alleging that it's a plain error, a giant mistake? You have to say we don't see it that way. Don't you have to say something about the merits? I don't think there's anything in this court's cases, and the other side hasn't pointed to anything that suggests that just because they claim that it's plainly unlawful, the commission is required to entertain that specific legal question. All that's required is for the commission to say why it's denying the rulemaking petition so this court can discern its path. But if you agree that it would be arbitrary and capricious if it were a plain error, it seems like maybe you should just say it doesn't cost you much to say we don't agree or just something about the claim that they're actually making. I mean, certainly the commission could have, but I still don't think this court's precedents require it. It may be running the risk. Just is it arbitrary and capricious to… It may be running the risk. …ignore what the merits were? Sorry, I didn't mean to interrupt you, Your Honor. It may be arbitrary and capricious to completely ignore what the merits were if the merits are allegedly extremely serious or important or clear. I don't think it ignored the merits of the petition. It ignored the specific check. How did it address the merits of the petition? Maybe I missed that. Well, I mean, I guess it depends on what you mean by merits. I mean, it addressed the… The claim that they were making. It did not address the claim of unlawfulness that they were making, yes, Your Honor. But there is nothing in any of these courts' precedents that suggests that the agency is required to address a petition in a certain way even when there is a claim of unlawfulness. The cases like Geller and those say that if it is in fact so clear like in Geller the regulation had been superseded and the agency just still denies rulemaking, that denial may be an abuse of discretion. But those cases don't say that, you know, it was a denial just because the agency didn't address the question. There's no cases requiring the agency to address the rulemaking petition in a particular way. What is required and what the crux of what this court's cases have held is that there needs to be… The agency needs to explain why it did what it did so this court can review it. And here the agency gave several rationales, how long these arbitration forms had been in existing, predating the securities laws. It made two points about resources constraints. It said that these, you know, the reexamination of FINRA's arbitration form has not been placed on the regulatory agenda and also that resources and priorities are being used for other capital formation and protecting investors. And then it noted in particular the context here of the Section 19C process, whereas this is the commission sitting in review of FINRA's private rules, and the Section 19C process gives the commission discretion as to when to invoke 19C, which is what FRIBON's rulemaking petition was asking, which is a very resource-intensive process. In addition to requiring written submissions, it requires the oral submission of data. But couldn't you give this letter to almost any or some form of this letter to any petition for rulemaking? It's just really not tailored. It's, you know, we have other priorities. We have discretion. I mean, I certainly don't think the part about, I mean, it situates it in context of the FINRA arbitration forum, and that is specific to this. Maybe I misread this. I thought that all it said about this specific petition was it's challenging rules that have been in effect for a long time. And then otherwise, it's really boilerplate. And I don't know, is that arbitrary and capricious to do sort of a form rejection that just says we have discretion here and we have other priorities and we're not putting it on the agenda? All of that is really something you could say to any petition for rulemaking. I mean, I don't think you can. I think there's the piece Your Honor mentioned. I think the 19C process wouldn't apply for all petitions for rulemaking. It would obviously apply to petitions for rulemaking in the 19C context, but that is a distinguishing factor. Certainly, the resources point could be invoked in a wider swath of cases, but I think you need to look at all the rationales together. And I think with all those rationales, this fits comfortably within the sports cases. Comfortably. Can you name some other cases where such a bare bones rationale was upheld? I think in Wild Earth, it was as bare bones as here, and I think Flyers Rights, it was as bare bones. I mean, it was just the decision not to deny rulemaking. Wild Earth is more specific. It submitted evidence of its budgetary and staff constraints, explained it had mandatory rulemaking some progress. In light of the constraints, it puts prioritizing sectors that emit more air pollutants than coal mines. That's more specific than here. I mean, here the commission also pointed to, you know, its current regulatory agenda. I mean, I think it's more specific there, but I think that has to do with the context of the rulemaking at issue. I don't know what more specificity, you know, would be required for this kind of challenge. You could say, you know, we're looking at other different FINRA things such as this, this, and this, and, you know, we don't have the resources to look at other ones in this area. You could just say more than we got other things to do. I think what was here is enough, but I just think to the point, that case involved, you know, data and studies and other pollutants that are susceptible to that sort of comparison. I'm not sure there's a great comparison here. I'm just saying, I'm not sure. I mean, you could easily have said, you know, you're claiming that this is a, you know, clear error. We don't see it that way, and it will take us a lot of resources to, you know, work this out, and we don't have those resources right now. I mean, all you're doing is writing a letter. So it's not that resource intensive to say something more. I simply, I don't think that these courts require that something more. You keep saying that, but I don't see any case that has upheld something as bare bones as this. Even if we're not going to have rules that say you must address merits or whatever, it seems like you have to say something that indicates you've thought about this, and I don't see that here necessarily. Respectfully, Your Honor, I think that if you look at the rules the commission gave at JA91 to 92 in context and together, it shows that the commission considered the petition. It didn't address the question in the way Thrivant wanted, but certainly that's not required. Can you tell me, like, what is your best argument for evidence that they considered this petition? Well, I mean, they considered the petition. They didn't consider the legal question the petition raises, but to me that's two different things. They're not required to address the legal question raised in the petition just because it's put before them. I guess I'm kind of focusing on the letter that they wrote, and so I guess what's your best argument for why that's adequate? I think that the letter at JA91 to 92 lays out several rationales that the commission gave for why it denied the petition. It said that the arbitration forum has been in existence for over 100 years, creating the securities laws. It said that it made two points about resources. It said that revision and reexamination of FINRA's rules is not on the current docket, and it said it was currently using the current regulatory agenda and it was using its resources for other priorities. And then it noted the 19C context, and it went through how 19C is an additional layer of discretion because it says the commission may abrogate FINRA rules, and it's a particularly resource-intensive process. So I think when you put those together— Sorry. Does it say the resource? I didn't recall them saying, adding that additional line about, and it's a super resource-intensive process. It did not say that. But it invoked 19C on JA92. It invoked 19C. Double discretion. Discretion squared or something was the only point made. Yes, Your Honor. It wasn't about the resources. But implicit in invoking 19C, which the statute provides, that in addition to written comments, it requires the oral presentation of data, additional resources. The agency didn't say it was concerned about the 19C resources as opposed to 19C gives us another layer of discretion. I think you can fairly read it. It's talking about resources and CITES 19C. But, again, that's just— I want to make sure I'm reading it. You are correct. It didn't draw that explicit reference. Are you relying on a line that says resources and personnel are being used for other matters? Well, that in combination with 19C, yes. Additionally, 19C gives us discretion. Right. It didn't make the explicit point I'm making here that that 19C discretion also involves additional resources because it involves the oral presentation of data and submissions as well as written submissions. But I think that's fairly encompassed by what the commission did say there. And I think that, again, that fits comfortably within this Court's cases. I would like to just address a few points. If an agency gets a rulemaking petition like this and simply responds with, we choose not to use our resources to address this issue, one sentence, would that be sufficient? I think that would be a harder case, which is not what we have here. I don't think it is precluded by this Court's case law. That's not my question, so let me try again. We choose not to use our resources to address this issue. Is that arbitrary and capricious for insufficient reason and explanation, or is it sufficient under existing precedent? I think it is a much closer case under existing precedent. I'd like to know whether it is or is not under your view of what existing precedent requires. Under my view, I don't think it is necessarily arbitrary and capricious, but I could see how it could be harder in that situation to discern the agency's path. But, again, I think we have... It's harder. It's just saying what your client said here. We really do not count the number of words in deciding whether something is arbitrary and capricious, and so if what the agency said here is, we choose not to devote our resources to this issue, and here we are saying that same point three or four different ways, I don't know why repeating it matters. Yes. I don't think it is arbitrary and capricious for an agency to say, we are not going to take up this rulemaking petition because we are using our resources elsewhere. I think that is consistent with Wild Earth and flyers rights in other cases. And you think that would be so no matter how clearly correct the claim is that the existing regime is contrary to law? Well, again, Your Honor, I think certainly there's the cases like Geller and some of the other cases which suggest that an agency can abuse its discretion if it ignores sort of a clear violation of law. In Geller, you know, it was the whole premise of the agency's regulation was the FCC regulated in order to have Congress enact a law. Congress enacted that law, and so the whole premise for the regulation was gone, and the FCC still didn't, in response to a petition for rulemaking, reevaluate its regulation. But I don't know that it came up in the context where there was, correct me if I'm wrong, but where there was an affirmative statement made that resources are being devoted elsewhere. I think that was part of it, but I don't think it was. I mean, there were several rationales given in Geller, but certainly I think that it could be arbitrary and capricious if there was clear legal invalidity, but we don't think they have come close to establishing that under the Geller American horse in other cases. And so it is not, because we're not in the realm of plainly unlawful or clear invalidity, however you want to phrase the legal test, because we're not in that Geller world. So is your understanding that if there's clear invalidity, then resources have to be devoted to it? Or could you still say, no matter how invalid it may be, our focus is elsewhere? I think, as the cases say, if the factual predicate for the rule has changed, the commission at least has to consider it. Even in Geller and American horse, they don't have to necessarily do the rulemaking. The courts did not actually impose rulemaking, but they said the agency at least has to consider it. So I think if we were in the clearly unlawful world, they wouldn't necessarily have to devote resources to actually do the rulemaking or take up the particular rulemaking petition at issue, but it was an abuse of discretion there to not even consider the question in some fashion, whatever fashion the agency determined best. Why isn't the fact that the SEC approved these registration statements including the attached customer agreements with the arbitration provisions, had previously approved them by inaction, but had previously approved them. Why doesn't that necessitate the agency sort of reconciling the conflict between its prior approval and at least some subcommittee of FINRA's disagreement? So, Your Honor, that's just a different... Besides all the arguments about Supreme Court cases. Right. That's just a different context. That's this context. No, no. Sorry. The context of allowing registration statements to go effective is a different context. What the Commission is looking at there, that's under the 1933 Act, and it's looking at the disclosures in the registration statement, and the fact that it let the registration statement go effective doesn't... The Commission is not evaluating or looking at FINRA rules or anything like that. It's simply a different context. It's a different process. You just need to educate me because I'm not an SEC specialist. They attach to the registration statements, the customer agreements, that said, you will not have FINRA arbitration, or that's not going to be the mandatory form of arbitration here. That's what they attach. When SEC approves that registration statement, approves something that specifically says, we're going outside FINRA regulation world, it doesn't approve that? It's not looking for... It couldn't possibly be checking for consistency with FINRA rules, all of FINRA rules. That's not what the agency is looking at when it's looking at a registration statement. There are specific things the agency is looking at when it looks at whether registration goes effective. It's a disclosure regime. Transparency, fairness, disclosure to customer? Sorry, do you look at transparency, fairness, disclosure to customers? What is disclosed to customers? Right, but it's... It's disclosed that we're going to have our own arbitration process to customers, but the Commission wouldn't look at that. That's just not part of the analysis of allowing the registration statement to go effective. It's simply a different context, Your Honor. And again, the time the Commission was reviewing the FINRA rules was back when it went through the section 19B process, which was, as Your Honor mentioned, for two of them in 2007. For one of them, it was 1989, for the three challenged rules. And that's when the Commission is evaluating the specific FINRA rules and their consistency with the Exchange Act. That's through the 19B process. The registration statement is just an entirely different thing. The SEC has not yet approved, then, this customer agreement, even though it technically was allowed to go into effect. No, it has not approved the agreement. It has let the registration statement go effective, but that is a different... That is simply an entirely different event under the securities laws. It does not weigh in on the arbitration agreement in the bylaws attached to the registration statement. You sure my colleagues don't have additional questions for you? Thank you, Your Honor.  Okay, we'll give you two minutes for a rebuttal. Thank you, Your Honor. I want to address both abuses of discretion that we serve here. First off, on the first abuse of discretion, Judge Pan, I think your questions to my friend were exactly right. If this denial letter here passes muster, it's a playbook that any agency could use in denying any rulemaking petition without saying anything at all. They just say, resources and personnel are being used elsewhere, and then they cite their statutory regulatory priorities, like protecting investors, market integrity, capital formation. That's not saying anything. Also, I would look at the court's decisions in, for example, WWHT and Geller, where the court held that a rulemaking petition requires, if it's going to be denied, that the agency show them it gave a hard look at the relevant issues. Geller says that an agency can't sidestep reexamination of rules where there are abnormal circumstances suggesting that the rules may no longer be valid. Here, after the policy statement, there's no question that that's true. On the second abuse of... Can we consider the policy statement? I mean, I take the practical point you're making, but can we consider that since that is long after it post-states the agency decision in this case? Well, I understand, Your Honor. And I think the point is that the policy statement recognized the force of the legal authority that we had asserted in the rulemaking petition. So from that standpoint... Can we consider it or not since it post-states the decision we're reviewing? Well, I don't think...  Right. I don't think in the terms of determining that the agency abuses discretion, I think that's clear in the first abuse of discretion already. But the point is, now what does the agency have to do? There's no question based on the policy statement now that on remand, you know, Geller has clearly met here that there are circumstances that offer re-examination based on what the agency has recognized. And I think the other point there is that, you know, Italian... But if we can't consider it, then we can't consider it. Well, I mean, to the extent this court is going to give direction on remand, I think it's absolutely... I mean, it's an agency rule. And so to that extent, it's... I mean, it's something that the court can absolutely consider as far as what the agency should and might address on remand. The second abuse of discretion, though, Judge Penn, your questions with regard to the plain legal error, that's the standard, of course, that this court looks at in determining that the agency abuses discretion. But when we're talking about whether, you know, when the agency re-examines its rules, what standard should it be applying, here that standard is met and, you know, implicated by the Exchange Act, which is, are these rules consistent with federal law? That's what Section 19B requires. That's what this court in Susquehanna has made clear, that the Exchange Act hardly envisions that SROs have rules that are not consistent with authority under the Exchange Act. And so the question is, should the agency re-examine rules to determine whether they're consistent with federal law? If we get back here on appeal, then the issue is, if they still fail to correct them, was that premise on plain error? If I could make one final point, to the extent the court is considering remand, the SEC's denial, which was clearly insufficient, was issued by the commission the day that this court ordered them to respond to our second mandamus petition. And so to the extent that we're now here on four years, to the extent there is a remand here, I would encourage the court to consider some sort of process where the commission has already essentially escaped mandamus proceedings for a year by issuing their denial and my clients are being harmed every day that these rules remain in place. Thank you, Your Honors. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Millett; Pan